UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      No. 1:17-cr-80

      v.                              Hon. Janet T. Neff
                                          United States District Judge

SAMEER PAUL GADOLA,

        Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

     The defendant, Sameer Gadola, has pleaded guilty to three counts of possession of child pornography. These charges arose out of conversations Gadola had online and via social media applications with three children, wherein he solicited and received sexually explicit photographs of the minors. Gadola sexually exploited additional children beyond the counts of conviction, both online and in person, which demonstrates that he is an individual who misuses children for his sexual gratification.

    The Court has the authority to impose a sentence of 30 years' imprisonment – the combined statutory maximums.  Given the nature and magnitude of Gadola's conduct, to deter such behavior, and to protect the public, a sentence within the advisory guideline range of 188 and 235 months of incarceration is appropriate.

    I.      Facts

      The presentence report summarizes the background of this case. (R.100: PSR, PageID.724.) The government highlights the following for the Court's consideration

at sentencing. The case began when a concerned parent noticed her child had had numerous contacts with Gadola on Instagram that she considered to be grooming. (*Id.,* PageID.730, ¶¶ 23-24.) This led law enforcement to analyze Gadola's social media accounts and electronic devices. (*Id.* PageID.730-31, ¶¶ 25-34.)

### A. Nature and Circumstances of Count 1

For a few years, Gadola conversed with J.L. via Instagram. (*Id.,* PageID.732-33, ¶ 37). J.L. was fifteen years' old when he and Gadola began to communicate; J.L. lives in Texas. (*Id.*)  J.L. was interviewed and admitted having these conversations and exchanging pictures with Gadola. An excerpt of their conversation from March 26, 2016, when J.L was sixteen, follows.

| | |
|---|---|
| Gadola: | … Oh, U wanna know a better way to masterbate bud? I know so many tricks u might not know. Id totally teach u |
| Gadola: | How big ru bud? If u don't know send me a pic and I'll know by just lookin at it bud. |
| J.L.: | What tricks do u know about |
| Gadola: | If u wanna go faster get some lube lotion then just use your wrist |
| J.L.: | I'm not sure I'm ready for this. I'm like new at this. |
| Gadola: | I think you're ready bud. Well first send me a pic of your dick. It's not being weird or gay I'm gunna tell u how big ur for starters." |
| J.L.: | Well I could tell you this. My dick is like 5 something inches long. |
| J.L.: | I'm a little uncomfortable sending dicks |
| Gadola: | You gotta get comfortable buddy. If a girl wants one in the future u gotta be comfortable bud. I'm here and giving you a lot of help |
| Gadola: | You can send one to me. U can trust me |
| J.L.: | Ok but its not hard like biology videos |
| Gadola: | Try to get it hard. Rub it to make it hard bud.  If u can't get it hard send a pic of ur not hard |
| J.L.: | Omg I made it hard<br>[*J.L. sends a picture which is a close up image of an erect penis.*] |

2

  Gadola:  Looks like 6-8 inches bud

(*Id.*)

### B. Nature and Circumstances of Count 2

In May 2016, Gadola conversed with H.H., who was a fourteen-year-old resident of Michigan. (*Id.*, PageID.733-34, ¶¶ 40-41.) H.H. and Gadola communicated using apps through the internet. (*Id.*) Some of the conversations were included in the PSR. (*Id.*) Additional pertinent portions of their conversations were included in the plea agreement and include:

May 17, 2016:
  Gadola:  Even tho I'm straight I don't mind exploring with boys lol
  Gadola:  If you were single id so experiment with u. Ur a good looking kid.
    [*H.H. and Gadola exchange nonsexual pictures.*]
  Gadola:  Have u ever sent dick picks? Lol. I've sent a few to my gf
  H.H.:  Yea I have
  Gadola:  That's my boy! I bet you're huge  [*Gadola sends a full body nude photograph of himself*]
  Gadola:  Here's a pic I've also sent my gf. How do u like it?
  H.H.:  Nice and are u in a public restroom
  Gadola:  Lol in a stall
  …
  H.H.:  Text my phone 517[*number redacted*]
  Gadola:  Let's send them thru here cutie. Don't worry buddy. I won't do anything with the pic.
  H.H.:  Ok u first it has to be live
  Gadola:  I'm at a restaurant waiting for my gf. I'm Goin to the bathroom
  Gadola:  To send it
  …
    [*Gadola sends two explicit images and H.H. responds with two images, depicting a boy standing with his pants visible around his ankles, with his hand on an erect penis.*]
  Gadola:  My boy!!!
  H.H.:  U like
  Gadola:  Hell yeah boy! U like mine?
  H.H.:  Yea is mine bigger?

| | |
|---|---|
| Gadola: | Mines longer yours is thicker. Mine would feel amazing in u tho boy. My gf says mine is the best she's ever had in her nice pussy. |
| H.H.: | I'm about to cum |
| Gadola: | Video it |
| H.H.: | Can you send another |
| | [*Gadola sends a picture from of himself masturbating. H.H. sends a picture similar to the previous ones that includes ejaculate.*] |
| … | |
| H.H.: | Hey my parents are getting my phone don't text me until I text u |
| Gadola: | Don't show them your messages |
| H.H.: | I deleted them bye |
| H.H.: | Hey my dad has my phone don't text my number no matter what ok |
| Gadola: | How long will he have your phone? |
| H.H.: | I think until tomorrow night |
| … | |
| H.H.: | How old are u? |
| Gadola: | I'm 21 |
| H.H.: | I'm only 14 |
| Gadola: | That's fine |
| Gadola: | 14 year old gay boys are cute |

May 21, 2016:

| | |
|---|---|
| Gadola: | Keep these messages between us |
| H.H.: | Wanna trade |
| Gadola: | U go first |
| H.H.: | vid or pic |
| Gadola: | Idc. Whichever u want. |
| | [*H.H. sends picture of himself, with his hand on his erect penis.*] |
| Gadola: | What ru watching cutie? |
| H.H.: | Porn I want to see u know |
| Gadola: | What would you do if u were on your knees in front of me? |
| H.H.: | Suck it show ur dick plz |
| Gadola: | Promos not to show anyone these messages |
| Gadola: | ^*promis |
| … | |
| | [*H.H. sends another image. He is standing over a bed, nude, and masturbating.*] |

(R.81: Plea Agreement, PageID.623-24.)

4

## C. Nature and Circumstances of Count 3

In October 2016, Gadola communicated with a thirteen-year-old boy in Tennessee via Instagram. (R.100: PSR, PageID.734-35, ¶ 42.) Parts of their conversation are in the PSR, and the plea agreement included additional relevant portions:

October 2, 2016:
    C.S.:    Hi
    Gadola:    What grade in ru in [*name redacted*]?
    C.S.:    9th wat grade u in????????
    Gadola:    I'm in 11th. Do u have a girlfriend? Do u like a girl?

October 3, 2016:
    Gadola:    What would u and be doin rn if we were with each other?
    C.S.:    Idk haveing sex probably
    Gadola:    I'd so be giving you my dick boy
    C.S.:    Yay
    Gadola:    You'd be taking my cock boy
    C.S.:    Okay
    Gadola:    what would u want me to do to u?
    C.S.:    Fuck me so hard idk tho I am jsut playing I think
    …
    Gadola:    I bet your moan is cute
    C.S.:    Idk my moan cuz I have naver been fucked
    Gadola:    You haven't haven't? hm. Send me a vid of u trying to moan. It's fine I won't judge.
    C.S.:    I really don't want to right now.
        [*CS sends a picture of his genitals, protruding from between red pants and a red shirt.*]
    C.S.:    There it's not much cuz I am not hard right now
    Gadola:    In a few hours when your fam goes to bed send one of you hard.
    C.S.:    okay but you will have to make me hard.
    Gadola:    I'll talk to u so dirty I'll make u hard in 50 seconds
    C.S.:    okay try right now
    Gadola:    I'm gonna kiss your sexy body all over and rub your cock so hard makin u wet and I'll put my dick in your mouth
    C.S.:    omg that worked
    Gadola:    let me see now my naughty boy

> [*C.S. sends a picture of himself shirtless and then a picture similar to the one earlier, but with an erect penis.*]

(R.81: Plea Agreement, PageID.625-26.)

### D. Relevant Conduct: Other Children Online.

Analysis of Gadola's Instagram account found 38 children in his contacts who appeared to be under 18, either as identified in their profiles or from the context of their conversations with Gadola. (R.100: PSR, PageID.731, ¶ 34.) Of those 38 children, Gadola had sexual conversations with 21 and discussed exchanging pictures with 23. (*Id.*, ¶ 35.) As early as 2014, a mother reported to law enforcement that her eleven-year-old son had sent Gadola pictures of his penis on Instagram. (*Id.,* PageID.736, ¶ 48.)

On Gadola's Snapchat account, 16 profiles were identified that belonged to minors. (*Id.,* PageID.732, ¶ 36.) One of those was C.K., later identified as a sixteen-year-old boy living in Michigan. (*Id.,* PageID.733, ¶ 38.) Gadola sent messages such as "My boy got a huge cock I bet" and "Atta boy! Wanna compare dude? It's not homo but I wanna see if my boy's is bigger than mine." (*Id.*) C.K. and Gadola then exchanged pictures of male genitalia. (*Id.*)

### E. Relevant Conduct: N.P.

Gadola also had sexual contact with N.P., a relative in Florida, as noted in the PSR. (*Id.,* PageID.735, ¶ 44 and 46.) By way of additional background, N.P. and Gadola had sexual conversations as well. At the times of the conversations below, N.P. was sixteen.

6

N.P. and Gadola communicated through Instagram. Gadola's side of the Instagram conversations was recovered; N.P.'s responses were not obtained by law enforcement. On March 22, 2016, Gadola sent a link to a pornographic image of male genitals and said, "Don't show anyone. This is between u an me bud." On April 22, 2016, Gadola sent another link to a pornographic image of male genitals and asked "What else would u wanna do bud?" On May 16, 2016, Gadola asked, "Do u wanna put your dick in a girl's pussy bud?"

N.P. and Gadola also communicated through Facebook Messenger, and pertinent parts of their conversations include:

May 19, 2016:
 Gadola: Hey buddy, I miss u. What would u wanna do if we were together rn?
 N.P.: Sit in your lap.
 Gadola: That's my boy! I'd be watching YouTube with u in my lap.
 N.P.: Ya
 Gadola: Where'd u want me to hold u? Would u want me to hold u everywhere?
 N.P.: Ya
 Gadola: That's my boy! Where in my lap do u like to sit on?
 N.P.: The middle of your lap
 Gadola: Good boy! Do u like to grind into my dick bud? Cuz I might get hard thinking about my girl and want u to help me out
 N.P.: Ya
 Gadola: You can rub it if u wanted
 N.P.: Ok
 Gadola: What else do u like bud?

Gadola's family visited N.P.'s family in September 2016. N.P.'s mother told FBI agents that she walked in on N.P. and Gadola masturbating together in N.P.'s room. Gadola was interviewed by the FBI and admitted that he and N.P. masturbated together and that N.P. had touched Gadola's penis. Gadola

7

subsequently failed an FBI polygraph examination. After being advised he had failed, Gadola advised the polygrapher that he had also asked N.P. if N.P. wanted to give Gadola a "blow job" and Gadola had put his penis in N.P.'s mouth. N.P. would have been seventeen at the time. N.P.'s family did not want to participate in this case. Gadola's family was also aware of this incident and described it as consensual. (*Id.*, PageID. 735, ¶ 46.) On November 29, 2016, two months after the sexual contact between them, Gadola sent a message to N.P. reading "Hey bud, I love when u sit in my lap cuz I love u cutie!"

When Gadola failed his polygraph examination, the polygrapher asked him if he wanted to write an apology letter. (R.76: Suppression Hr'g. Tr. Vol. II, PageID.505.) Gadola's letter included a statement directed at N.P., which said, "I'd like to extend my deepest apology to [my relative], as I know he's been dealing with this in a whole different way. [Relative], know that [as your relative] I never intend to harm you like the way I did." (R.68-1: Ex. to Gov't Resp. to Mot. to Suppress, PageID.301.)

### F. Relevant Conduct: The J. Family.

During his post-polygraph interview, Gadola also admitted to sexual contact with a child for whom he was babysitting. (R.76: Suppression Hr'g Tr. Vol. II, PageID.504.) Gadola admitted to having sexual contact with the younger boy of the family while babysitting him and his older brother in the summer of 2013. (*Id.*) This family was later identified as the J. family. (R.100: PSR, PageID.735-36, ¶¶ 46-47.) The government anticipates that the parents of the J. children will testify at the

sentencing hearing that the FBI came to the J. home and told the parents that their children's names came up in an investigation. The J. family was given no details at that time about the suspect or the allegations. The J. children went to a Child Advocacy Center for forensic interviews.

During his forensic interview, the younger of the J. sons, C.J., made no disclosures; however in 2013, when Gadola admitted he touched C.J., C.J. would have only been five years' old. (*Id.*) C.J. did submit a victim impact statement indicating that Gadola "emotionally hurt me [and] my family" and indicating that Gadola "would tickle me in places I did not want to be tickled and kind of pressured me to let him tickle me in those places." (R.105: Victim Impact Statements, PageID.767.)

The older son, B.J., described being touched by Gadola at various times.

> C▊ was forensically interviewed and recalled being babysat by Sameer Gadola, but did not disclose and abuse or inappropriate touching.
>
> B▊ was forensically interviewed and stated that beginning at around age 13 or 14, Sameer would always have B▊ sit on his lap when he babysat him, while watching movies or playing video games in the basement. B▊ parents knew Sameer's parents and B▊ had known Sameer since he was little. Sameer would hold B▊ hand, slide his shorts up, and rub B▊ thighs, but B▊ was too scared to tell him to stop. One time, Sameer brought B▊ to the movies and touched B▊ genitals, outside the clothes, while he was rubbing B▊ thigh. Sameer also put his hand under B▊ shirt to rub his back while they were at the theater watching the movie

During her forensic interview, one of the J. family daughters, G.J., admitted having explicit conversations and exchanging photographs with Gadola:

9



G\_\_\_ stated that during the summer of 2016, Sameer had tried to date her and she initially didn't like him. Sameer started asking about dating G\_\_\_ after he did makeup for her and one of her friends. Sameer was always commenting on pictures of her and one time, Sameer asked if G\_\_\_ wanted to come over to have private alcohol lesson in his basement.

G\_\_\_ was with her friend \_\_\_ when Sameer asked her to do sexual things and sent her photographs of his penis. Sameer asked G\_\_\_ for nude photographs, but she just sent a picture of her and \_\_\_ wearing tank tops.

Later, Sameer continued to send G\_\_\_ photographs of his penis and to ask G\_\_\_ for naked pictures in return. Initially, G\_\_\_ stated she did not send Sameer any nude images, however, she later admitted that she had sexual conversations with Sameer on Snapchat and that she may have sent him nude photographs.

As outlined in the victim impact statements of the J. parents, the entire family was affected by this case, or as the father put it, "We've been absolutely shattered." (R.105: Victim Impact Statements, PageID.770.) The J. family considered themselves to be close friends of the Gadola family and have been left reeling by the allegations in this case. (*Id.,* PageID.763.) The J. children are in counseling, as are the parents, to deal with their feelings of depression and guilt, as well as anger and betrayal. (*Id.*, PageID.765.)

II. Sentencing Considerations

A. Nature and Circumstances of the Offense.

The nature and circumstances of the offense are summarized in the Presentence Report and the preceding paragraphs. The Sixth Circuit has noted when it comes to sentencing on possession of child pornography charges, "[t]hat the producers of child pornography are more culpable, however, does not mean that its knowing and deliberate possessors are barely culpable at all." *United States v.*

10

*Bistline,* 665 F.3d 758, 765 (6th Cir. 2012). Gadola is much more than "barely culpable" because he was not just a knowing possessor. Gadola is not a person who simply downloaded or possessed some child pornography from a site on the dark web or a peer-to-peer program. Gadola reached out to children online, attempting to befriend and mentor them, to make them comfortable, and to offer advice before he exploited them. Gadola's actions have not only impacted J.L., H.H., and C.S., the victims in the counts to which he pleaded guilty, but other children with whom he communicated online. Gadola also took advantage of the opportunities presented by befriending and babysitting the J. family, touching some of the children inappropriately and soliciting pictures from others. Gadola even used a family member to meet his sexual needs, engaging in sexual chats and sexual behavior with a relative both online and in person. Gadola's conversations and behavior show how pervasive his victimization was; he took advantage of any opportunity he had to exploit minors.

### B. History and Characteristics of the Defendant.

Through various filings and in arguments to this Court, the defense presents Gadola as having borderline intellectual functioning, which is characterized by being "emotionally immature" and "delayed in … emotional development." (R.36: Def.'s Exhibit F., PageID.140.) The defense argued that Gadola "did not possess the mental capacity to understand the nature of his Miranda rights" and suggested that Gadola may not be competent or that he was not capable of understanding the wrongfulness of his conduct. (R.33: Def.'s Br. in Supp. of Mot. to Dismiss,

11

PageID.88.) The defense criticized the agents for separating Gadola, a twenty-two-year-old adult suspect, from his parents, as the agents interviewed him about his criminal sexual misconduct. The not-so subtle argument is that Gadola is but a child himself, who did not understand what he was doing.

A forensic evaluation completed by a psychologist at the Bureau of Prisons found that: "Although Mr. Gadola has most recently been diagnosed with intellectual disability, moderate (2015) and borderline intellectual functioning (2017), the current intelligence testing and collateral information … do not support these diagnoses." (R.60: Forensic Evaluation, PageID.265.) The forensic psychologist found that Gadola was in the "average range of intelligence" with diagnoses of ADHD and specific learning disorder. (*Id.*) The psychologist went on to describe that Gadola has "some limitations in his understanding of certain legal concepts …. [but] he does have a basic fundamental understanding of his current legal situation." (*Id.*, PageID.269.)

Furthermore, the conversations quoted above also show Gadola's own understanding of what he was doing. His admonitions to "keep this between you and me," as he told N.P., and his warnings to H.H., "Don't show [your parents] your messages" and "keep these between us" indicate that Gadola understood and appreciated the wrongfulness of the conduct in which he was engaged. The conversations also demonstrate his willingness to manipulate the minors to get what he wanted. Gadola at times lied about his age; telling C.S. he was in 11th grade. (R.100: PSR, PageID.734, ¶ 42.) Gadola told other boys he just wanted to

12

"compare sizes," as he did to J.L. and C.K., and that it wasn't "weird" or "gay" or "homo." (*Id.,* PageID.734-35, ¶¶ 37-38.) Gadola would not take no for answer, telling J.L. "You gotta get comfortable buddy. If a girl wants one in the future u gotta be comfortable bud. I'm here and gving you a lot of help. You can send one to me. U can trust me." (*Id.,* PageID.734, ¶ 37.)

A twenty-one-year-old adult cajoled, manipulated, and pressured actual children to engage in criminal acts – masturbating in a public bathroom and producing child pornography; and then convinced the children to keep quiet. This is not the conduct of an emotionally immature person. Rather, it is the pattern of a sexual predator.

### C. The Seriousness of the Offense and Just Punishment

Crimes involving the sexual exploitation of children are among the most serious offenses there are. "Child pornography harms and debases the most defenseless of our citizens." *United States v. Williams,* 553 U.S. 285, 307 (2008). "Knowing possession of child pornography … is not a crime that happens to a defendant. It is not a crime of inadvertence … Possession of child pornography instead becomes a crime when a defendant knowingly acquires the images." *Bistline,* 665 F.3d at 765.

Here, although Gadola pleaded guilty to possession of child pornography, the range of his relevant conduct shows that his exploitation was much more pervasive and all-encompassing than simply collecting photographs of young teens from the

internet. Gadola engaged in an ongoing, persistent, and repeated pattern of exploitation of numerous minors.

### D. Adequate Deterrence and Protection of the Public

Because of the extent of Gadola's exploitation of minors, a within-guidelines sentence is necessary to deter others who would engage in similar ongoing patterns of manipulation of minors. "General deterrence is crucial in the child pornography context." *United States v. Camiscione,* 591 F.3d 823, 834 (6th Cir. 2010).

Further, Gadola's demonstrated willingness to exploit any minors he can, be they children in his care, family members, or kids he meets on the internet, shows that the public needs to be protected from Gadola. Gadola's behavior shows that he was unwilling to stop taking advantage of the minors he encountered; to protect additional children, a within-guidelines sentence is required.

### E. Restitution

Gadola objects to the restitution request of the J. family. (R.100: PSR, PageID.753.) His plea agreement stated that he "agrees to make full restitution to all of the victims of his sexual exploitation of children." (R.81: Plea Agreement, PageID.620, ¶ 5.) Because Gadola admitted to touching C.J. inappropriately, because B.J. admits Gadola touched him inappropriately, and because G.J. admits that Gadola sent her obscene pictures and solicited naked pictures of her—the J. family children are "victims of [Gadola's] sexual exploitation of children." (R.100: PSR, PageID.753.) The J. parents have described that this has required counseling for the family and prescriptions for some of the family members; the J. family has

provided documentation and receipts in support of these requests. (R.105: Victim Impact Statements, PageID.771-74.) Therefore, restitution to the J. family should be ordered as outlined in the PSR in the amount of $66,472.38.

### III.  Conclusion

For the reasons set forth above, the United States respectfully requests that the Court impose a sentence within the advisory sentencing guidelines range.

                                    ANDREW BYERLY BIRGE
                                    United States Attorney

Date:  September 4, 2018             */s/Alexis M. Sanford*
                                    ALEXIS M. SANFORD
                                    Assistant United States Attorney
                                    P.O. Box 208
                                    Grand Rapids, MI  49501-0208
                                    (616) 456-2404